IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RAYNELL L. SILVA-BORERO,<br><br>            Plaintiff,<br><br>       vs.<br><br>EQUIFAX, INC.,<br><br>            Defendant. | CIV. NO. 19-00265 JMS-RT<br><br>ORDER (1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND |

### ORDER (1) GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS; AND (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND

### I. INTRODUCTION

On May 28, 2019, pro se Plaintiff Raynell L. Silva-Borero filed a Complaint against Defendant Equifax, Inc. ("Equifax"), and an Application to proceed in forma pauperis ("IFP Application"). ECF Nos. 1-2. As set forth below, the court GRANTS Plaintiff's IFP Application and DISMISSES the Complaint, with leave to amend, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2).

### II. IFP APPLICATION

As set forth in the IFP Application, Plaintiff's income is limited to bi-weekly gross wages of $741.39, and Plaintiff has neither money in a bank account nor any assets. IFP Application ¶¶ 2-5. The IFP Application further indicates that Plaintiff has monthly expenses totaling $490 for water, electricity, and phone

service, and owes $250 per month for a personal loan. *Id.* ¶6. The court finds that Plaintiff has made the required showing under 28 U.S.C. § 1915(a) to proceed in forma pauperis (i.e., without prepayment of fees); therefore, the court GRANTS Plaintiff's IFP Application.

### III. BACKGROUND

As alleged in the Complaint, Plaintiff exhausted administrative remedies by sending Equifax several documents in which Plaintiff asserted facts and requested that Equifax provide "proofs of claim," essentially disputing such facts. ECF No. 1 at PageID # 4-5. By failing to respond to those documents, Equifax "accepted" the asserted facts, and is therefore liable to Plaintiff for "$75,000,000.00" including "triple damages, punitive damages and all court costs." *Id*.

Copies of the referenced documents are attached to the Complaint. One document states that Plaintiff is a victim of a 2017 Equifax data breach. ECF No. 1-1 at PageID #8. In that document, Plaintiff further states that "I am . . . injured by this data breach in that I DO NOT know who may have my personal data or where my data is being used as a result of the fraudulent data breach." *Id.*

///

///

///

Plaintiff also asked that Equifax provide twelve "Proofs of Claim,"[1] and warned that Equifax's "non-response and or failure to provide Proof of Claim" will (1) "constitute agreement" that Plaintiff is entitled to the requested remedies, and (2) "will equate to commercial acquiescence to the terms" set forth in a "final Affidavit and Notice of Default."  ECF No. 1-1 at PageID #8-9.

---

[1] The twelve "Proofs of Claim" are:

1.  Proof of Claim that on September 8, 2017 Equifax, Inc. did NOT report that over 148 Million Americans' personal data housed by Equifax, Inc. had been stolen and/or compromised.
2.  Proof of Claim that Equifax, Inc. did NOT know of said data breach six months before reporting said data breach on September 8, 2017.
3.  Proof of Claim that Equifax, Inc. did NOT intentionally try to cover up the data breach only to be forced to reveal said data breach six months after the breach actually occurred.
4.  Proof of Claim that Equifax, Inc. protected my personal data and did NOT allow my personal data to be breached and stolen by unknown entities.
5.  Proof of Claim that Equifax, Inc. knows exactly where the personal data of 148 Million Americans is.
6.  Proof of Claim that Equifax, Inc. knows exactly who stole the personal data of 148 Million Americans.
7.  Proof of Claim that Equifax, Inc. is NOT liable to the 148 Million Americans whose data was stolen as a result of the data breach at Equifax, Inc. reported on September 8, 2017.
8.  Proof of Claim that Equifax, Inc. HAS corrected ALL security lapses and has taken ALL security measures possible to ensure that this data breach will not happen again.
9.  Proof of Claim that the U.S. General Accounting Office (GAO) did NOT on September 8, 2018 release a comprehensive report examining the reasons for the massive breach of personal information from Equifax, Inc.
10.  Proof of Claim that the U.S. General Accounting Office (GAO) report did NOT summarize an array of errors inside the company, largely related to a failure to use well-known security best practices and a lack of internal controls and routine security reviews.
11.  Proof of Claim that through the fraudulent data breach at Equifax, Inc. I have NOT been personally injured and my ability to obtain credit has NOT been negatively affected resulting in economic hardships.
12.  Proof of Claim that Equifax, Inc. is NOT liable to me for damages no less than a minimum of $10,000,000.00 Ten Million Dollars including triple damages and costs.

ECF No. 1-1 at PageID #8-9.

Equifax apparently did not respond, because Plaintiff then sent two "Affidavit[s] of Certificate of Non-Response" and an "Affidavit and Notice of Default." *Id.* at PageID #13, 17-18. The "Affidavit and Notice of Default" states that by failing to respond to the prior documents, Equifax has "agreed and acquiesced" to the facts and "Proofs of Claim" set forth in those documents, and is therefore liable to Plaintiff and 148 million Americans for $75 million, including "triple and punitive damages and costs." *Id.* at PageID #18-19; *see also* ECF No. 1 at PageID #4-5.

## IV.  **<u>STANDARDS OF REVIEW</u>**

The court must screen the Complaint for each civil action commenced pursuant to 28 U.S.C. § 1915(a), governing IFP proceedings. The court must sua sponte dismiss a complaint or claim that is "frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to sua sponte dismiss an in forma pauperis complaint that fails to state a claim).

Screening under § 1915(e)(2) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain

4

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (recognizing that a complaint that fails to allege a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a plausible claim) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  However, although the court must accept as true allegations of material fact, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (citing *Iqbal*, 556 U.S. at 678).  That is, conclusory statements, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," and factual allegations that only permit the court to infer "the mere possibility of misconduct" fall short of meeting the plausibility standard. *Iqbal*, 556 U.S. at 678-79; *see also Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Because Plaintiff is proceeding pro se, the court liberally construes her Complaint and resolves all doubts in her favor.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The court must grant leave to amend if it appears that Plaintiff can correct the defects in her Complaint, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

2000), but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate.  *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013); *see also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment") (citation omitted).

## V.  DISCUSSION

### A.   The Complaint Fails to State a Claim[2]

Neither the Complaint nor the attached documents identifies any cognizable legal theory or asserts any specific, let alone plausible, claim for relief.

In the document setting forth the "Proofs of Claim," Plaintiff asserts that in connection with the "fraudulent data breach," Equifax committed "torts." ECF No. 1-1 at PageID #8.  But Plaintiff fails to identify any specific tort Equifax committed and fails to allege facts to support some unspecified tort.  To the extent Plaintiff may be attempting to assert a fraud claim, the Complaint fails to allege facts with the requisite particularity to state a plausible claim.  *See* Fed. Rule of Civ. Proc. 9(b) (requiring that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"); *see*

---

[2] This order does not address whether Plaintiff has sufficiently alleged a case or controversy to establish subject-matter jurisdiction.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

*also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u-4 ("Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud."). Thus, the Complaint fails to state a plausible tort claim.

Further, the Complaint alleges that by failing to respond, Equifax is "in default under contract." ECF No. 1 at PageID #4. But Plaintiff fails to identify or provide a copy of any applicable contract between the parties. The documents Plaintiff sent to Equifax do not constitute binding contracts because there is no indication that Equifax agreed to Plaintiff's terms. *See Carson v. Saito*, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971) (recognizing that as a "fundamental principle of law[,] there must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract") (quoting *Honolulu Rapid Transit Co. v. Paschoal*, 51 Haw. 19, 26, 449 P.2d 123, 127 (1968)); *see also In re Estate of Tahilan v. Friendly Care Home Health Servs., Inc.*, 731 F. Supp. 2d 1000, 1006 (D. Haw. 2010) (explaining that mutual assent must include "an offer, an acceptance, and consideration") (citing *Douglass v. Pflueger Haw., Inc.*, 110 Haw. 520, 525, 135 P.3d 129, 134 (2006)).

Plaintiff appears to base this action solely on Equifax's failure to respond to Plaintiff's documents. But absent some duty or contractual obligation,

Equifax's failure to respond does not create a cognizable claim. Plaintiff has alleged neither.

Rather, Plaintiff contends that "no more than (affidavits) is necessary to make the prima facie case." ECF No. 1-1 at PageID #13, 17 (citing *United States v. Kis*, 658 F.2d 526, 536 (7th Cir. 1981), *abrogated on other grounds by Church of Scientology of Cal. v. United States*, 506 U.S. 9 (1999)). To the extent Plaintiff relies on *Kis* to support the contention that based solely on her "Affidavit of Certificate of Non-Response," Plaintiff has stated a claim for relief, such reliance is misplaced. *Kis* recognized that in the context of an action for issuance of an Internal Revenue Service ("IRS") summons, an agent's affidavit is generally sufficient to prove the requisite four elements of a prima facie case establishing the existence of necessary conditions for such summons. 658 F.2d at 536. Here, the instant action does not involve an IRS summons. Moreover, *Kis* does not hold that an agent's affidavit alone was sufficient to create a *claim*. Rather, *Kis* held that the affidavit was sufficient to prove the four elements of a legally cognizable claim for enforcement of an IRS summons.

In short, even construed liberally, Plaintiff's Complaint neither asserts a claim or cognizable legal theory nor alleges facts under a cognizable legal theory sufficient to state a plausible claim for relief. *See UMG Recordings, Inc.*, 718 F.3d

8

at 1014; *Balistreri*, 901 F.2d at 699. The Complaint is DISMISSED for failure to state a claim.

## B. Leave to Amend

Because Plaintiff may be able to assert a plausible claim for relief, Plaintiff is granted leave to amend her Complaint by August 26, 2019, to attempt to cure the deficiencies set forth above. If Plaintiff chooses to amend, she must write short, plain statements telling the court: (1) the specific basis of this court's jurisdiction;[3] (2) the legal right Plaintiff believes was violated; (3) the name of the defendant who violated that right; (4) exactly what that defendant did or failed to

---

[3] Generally, a plaintiff may establish the court's subject matter jurisdiction in one of two ways: (1) by asserting that a defendant violated the Constitution, a federal law, or treaty of the United States, *see* 28 U.S.C. § 1331; or (2) by invoking the court's "diversity jurisdiction," which applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States," 28 U.S.C. § 1332(a)(1). As to the amount in controversy, "a claim made in good faith in the complaint satisfies the jurisdictional requirement for diversity." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). But, if "from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed" the action must be dismissed. *Id.* at 289.

Here, the Complaint alleges that Plaintiff and Equifax are citizens of Hawaii and Georgia, respectively, and that the amount in controversy is $75 million. ECF No. 1 at PageID #3-5. But the Complaint does not allege any actual damages that Plaintiff has suffered as a result of the data breach. That is, there is no allegation that any unauthorized use of Plaintiff's personal information has occurred, that Plaintiff incurred any cost for heightened financial monitoring, or that Plaintiff suffered any actual loss as a result of the data breach.

Thus, should Plaintiff choose to file an amended complaint, she must include good faith allegations of injury or damages of at least $75,000 to establish diversity jurisdiction. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 287 n.10 ("It is plaintiff's burden both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation.") (citing *McNutt v. Gen. Motors Corp.*, 298 U.S. 178, 182-89 (1936) (other citations omitted)).

do; (5) how the action or inaction of that defendant is connected to the violation of Plaintiff's rights; (6) what specific injury Plaintiff suffered because of that defendant's conduct; and (7) what relief Plaintiff seeks.  Plaintiff must repeat this process for each person or entity that she names as a defendant.  If Plaintiff fails to affirmatively link the conduct of each named defendant with the specific injury she suffered, the allegation against that defendant may be dismissed for failure to state a claim.

An amended complaint generally supersedes a prior complaint and must be complete in itself without reference to the prior pleading.  *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  Claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not repled).

The amended complaint must state that it is the "First Amended Complaint," and it may not incorporate any part of the original Complaint by reference, but rather, any specific allegations must be retyped or rewritten in their entirety.  Plaintiff may include only one claim per count.  Any cause of action that is not raised in the First Amended Complaint is waived.  *See id.*  Failure to file an

amended complaint by August 26, 2019 will result in automatic dismissal of this action.

## VI. **CONCLUSION**

Based on the foregoing, Plaintiff's IFP Application is GRANTED, and the Complaint is DISMISSED for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff is GRANTED leave to file an amended complaint on or before August 26, 2019 that attempts to cure the deficiencies set forth above. Failure to file an amended complaint by August 26, 2019 will result in automatic dismissal of this action without prejudice.

To assist Plaintiff to comply with this order, the Clerk of Court is DIRECTED to send Plaintiff a copy of the court's pro se civil complaint form.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 29, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Silva-Borero v. Equifax, Inc.*, Civ. No. 19-00265 JMS-RT, Order  (1) Granting Application to Proceed In Forma Pauperis; and (2) Dismissing Complaint With Leave to Amend